UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ANGELA GRAHAM, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-00065 |
| | § | |
| DYNCORP INTERNATIONAL, INC.; | § | |
| and DYNCORP INTERNATIONAL, | § | |
| LLC | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM  AND ORDER

This case arises from an accident at Camp Davis, an American military base in Afghanistan.   Plaintiff Angela Graham, a resident of Oklahoma, filed suit against DynCorp International, Inc. (DynCorp Inc.) and DynCorp International, LLC (DynCorp LLC).  Both DynCorp entities move to dismiss for improper venue on the ground that they lack continuous and systematic general business contacts in this forum.  *See* Docket Entry Nos. 4; 13.  Alternatively, they seek a convenience transfer to the Eastern District of Virginia.  Having reviewed the parties' pleadings and briefing, the facts, and the law, this Court determines that venue is improper in this District.  In deciding how to respond to that deficiency, the Court dismisses DynCorp Inc. but exercises its option of transferring the case against DynCorp LLC, and concludes that the Northern District of Texas, Fort Worth Division, is the most convenient forum in which venue lies against that defendant.

## I.   BACKGROUND [1]

On April 10, 2011, while stationed at Camp Davis, Graham sustained injuries when a vehicle driven by a DynCorp employee hit the portable laundry container where Graham was located.  Graham claims that the collision resulted in serious injuries to her back, neck, and jaw.  The accident worksheet lists the cause as inattentive driving and indicates that the accident was drug or alcohol related.

Although the injury occurred in Afghanistan and Graham is a resident of Oklahoma, Graham brought this action for negligence in federal court in the Southern District of Texas.  The original complaint named only DynCorp Inc. as a defendant.  That entity filed a motion to dismiss for lack of venue, or in the alternative, to transfer venue to the Eastern District of Virginia.  Graham then filed an amended complaint adding DynCorp LLC as a defendant.  The LLC then filed a motion to dismiss mirroring the arguments made in the first motion to dismiss.

## II.   LEGAL STANDARD

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3).  *See* Fed. R. Civ. P. 12(b)(3).  Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper.  *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citation

---

[1] The Court accepts as true all the allegations in the complaint in reciting the facts of this case, resolving all factual disputes in favor of plaintiff.  *See Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted).

omitted).  "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted).  If venue is lacking, section 1406 instructs district courts to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  The decision to dismiss or transfer lies within the court's discretion.  *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (citing *Dubin v. United States,* 380 F.2d 813, 815 (5th Cir.1967)).

III.   **DISCUSSION**

   **A. The Venue Standard**

   Graham contends that venue is proper in the Southern District of Texas because the DynCorp entities resides in this district.  *See* 18 U.S.C. § 1391(b)(1).  Venue is proper in a district "in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b).  The statute then defines residence for various types of parties, including business entities:  "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's

personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). The venue analysis thus largely collapses into a personal jurisdiction analysis.

There is a twist, however, in states like Texas with multiple federal judicial districts. In this situation, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."[2] *Id.* § 1391(d). The Court will thus conduct a personal jurisdiction "contacts" analysis, but with the Southern District of Texas, rather than the State of Texas, being the relevant jurisdiction.

---

[2] Section 1391(d) refers only to a "corporation," and DynCorp LLC is a limited liability company. Contrast section 1391(d)'s use of "corporation" with section 1391(c)'s much broader reference to "an entity with the capacity to sue and be sued in its common name under applicable law." 28 U.S.C. § 1391(c)(2). Basic principles of statutory construction—namely the requirement to follow plain language and to give meaning to different language in the same statute—would seem to require applying section 1391(d) only to corporations.

The development of this different language also warrants consideration. Prior to the Federal Courts Jurisdiction and Venue Clarification Act of 2011, both of these provisions were contained in 1391(c), and both used only the term "corporation." *See* 28 U.S.C. § 1391(c) (2010). Courts, however, including the Supreme Court, had long interpreted the term "corporation" in section 1391(c) to include unincorporated associations like partnerships and LLCs. *See StormWater Structures, Inc. v. Platipus Anchors, Inc.*, No. H-09-2755, 2010 WL 582554, at *9 (S.D. Tex. Feb. 11 2010) (citing cases). In the Clarification Act, Congress codified this judicial interpretation by including the "whether or not incorporated" language in section 1391(c)'s general residence definition, which applies in single-district states. But Congress also moved the multi-district rule into a separate section 1391(d), which retained the prior use of "corporation." *See* 14D Charles Alan Wright et al., Federal Practice & Procedure § 3812 (describing this history and calling section 1391(d)'s failure to include unincorporated associations an "oversight"). So much for "clarification" of venue law.

Despite this distinction in the current statute, the Court feels compelled to follow the precedent that reads the "corporation" language to refer to unincorporated entities like LLCs.

Note the emphasis on a "contacts" analysis.  Some courts applying section 1391(d)'s multi-district residence rule[3] undertake a full personal jurisdiction inquiry, with the first step of considering the forum state's long arm statute and then proceeding to the Due Process Clause's "minimum contacts" analysis.  *See, e.g.*, *Zinn v. Gichner Sys. Grp.*, No. CIV.A. 93-5817, 1994 WL 116014, at *2–3 (E.D. Pa. Apr. 5, 1994); *Walbro Automotive Corp. v. Apple Rubber Prods., Inc.*, No. 92 Civ. 4179(KMW), 1992 WL 251449, at *3 (S.D.N.Y. Sept. 18, 1992); *Ill. Tool Works v. Rawplug Co.*, No. 90 C 1742, 1990 WL 171601, at *3 (N.D. Ill. Oct. 25, 1990).  This Court will follow the better-reasoned approach that recognizes the venue statute only refers to the "*contacts* [that] would be sufficient to subject it to personal jurisdiction if that district were a separate State."  28 U.S.C. § 1391(d) (emphasis added); *see Smehlik v. Athletes & Artists, Inc.*, 861 F. Supp. 1162, 1169–70 (W.D.N.Y. 1994); *Bicicletas Windsor, S.A. v. Bicycle Corp. of Am.*, 783 F. Supp. 781, 786 (S.D.N.Y. 1992); *Benetton Mfg. Corp. v. Ben-Acadia Ltd.*, No. 89-1119, 1989 WL 106473 (E.D. La. Sept. 14, 1989); 14D Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 3811.1 ("Since the statute does not say that it should, and there is no good reason to assume that the particular district would have the same long-arm statute as the state if it were a separate state, perhaps the better view is that whether this test is satisfied is wholly a question of federal law

---

[3] The cases cited in this paragraph applied the same rule, but when it was codified in 28 U.S.C. § 1391(c).  *See supra* note 2.

and that state law on amenability to process is irrelevant to the federal venue decision.").

With respect to that "minimum contacts" analysis, "the canonical opinion . . . remains [*International Shoe*], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  In this case, Graham rightly does not contend that specific jurisdiction exists, given that the injury occurred in Afghanistan, so the sole issue is general jurisdiction.

General personal jurisdiction is "all-purpose" and grants a court the power "to hear any and all claims against" a party regardless of where the events at issue took place.  *Goodyear*, 131 S. Ct. at 2851 (quotation and citation omitted).  As highlighted by recent Supreme Court decisions, general jurisdiction requires a substantially higher degree of contacts than specific jurisdiction.  *Compare Goodyear*, 131 S. Ct. at 2851 (ruling on general jurisdiction), *with J. McIntyre*

*Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (ruling on specific jurisdiction).

A court has general jurisdiction over a nonresident defendant "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 317). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). Under this test, the defendant's "contacts must be reviewed in toto, and not in isolation from one another." *Id.* at 610 (citations omitted). Continuous or repeated contacts will not be sufficient unless they are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221 (5th Cir. 2012) (quoting *Goodyear*, 131 S. Ct. at 2853). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citation omitted).

**B. General Jurisdiction Analysis**

The venue statute's requirement of conducting a "contacts" analysis for the judicial district rather than the forum state turns out to doom Graham's attempt to subject Defendants to this Court's jurisdiction.  While the Court concludes that DynCorp LLC has sufficient contacts to be subject to general jurisdiction in Texas because of its substantial presence in Fort Worth, *see infra* Section III.C, its contacts limited to the Southern District do not meet the high level required for general jurisdiction.

      1.  <u>DynCorp Inc.</u>

With respect to DynCorp Inc., the Court sees few, if any, contacts with this District or with Texas.  The government contracts in Texas that Graham attributes to the Defendants are contracts entered into by DynCorp LLC.  Based on the record before the Court and a review of public filings, DynCorp. Inc. appears to be nothing more than a shell holding company.  DynCorp. Inc. stated at the scheduling conference that it had nothing to do with the incident and at issue.  Given the limited activities of that entity, that appears to be the case.  The Court can therefore easily conclude that DynCorp. Inc. does not have contacts with this forum that would subject it to venue.  Moreover, because DynCorp. Inc.'s apparent inactivity complicates the venue transfer analysis discussed below, the more

efficient resolution is to dismiss it from this case for lack of venue pursuant to Rule 12(b)(3).

> 2.   DynCorp LLC

The contacts Graham identifies as a basis for venue involve DynCorp LLC. That entity has performed a great deal of work for NASA in this District.  Graham points to DynCorp LLC's recent $176.9 million contract with NASA to provide support services at different NASA facilities, including Ellington Field in Houston and the fact that DynCorp LLC has entered into approximately $155 million worth of contracts with NASA in this District since 2000.  *See* Docket Entry Nos. 14-3; 14-6.  DynCorp LLC admits that it has 154 employees in this District and has derived approximately $47 million in revenue for its services at Ellington Field. *See* Docket Entry No. 13 at 7.  However, it argues in response that it merely uses NASA facilities at no cost and with no maintenance responsibilities, and the income it derives here is but a small fraction of its total revenue.  *See* Docket Entry Nos. 13 at 7; 13-1 at 2; 13-2 at 10, 13; *see also* Delta Tucker Holdings, Inc., Annual Report (Form 10-K) 11, 66 (Mar. 27, 2013) [hereinafter Delta Annual Report 2013], *available at* http://www.sec.gov/Archives/edgar/data/1514226/000119312513128795/d44503a d10k.htm (SEC filing of DynCorp holding company showing DynCorp's annual revenues of $4.04 billion and 29,000 total employees).

The few Supreme Court cases addressing general jurisdiction demonstrate that the above contacts do not rise to the level of the "continuous and systematic" ones required to confer general jurisdiction.  *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416–17 (1984).  In *Helicopteros*, the Supreme Court found a Colombian corporation's contacts in Texas insufficient to support an exercise of general jurisdiction over a claim involving a fatal helicopter crash in Peru.  *Id.* at 418–19.  The defendant in *Helicopteros* had purchased over $4 million of helicopters and equipment from a Texas company; sent its prospective pilots to Texas for training and other maintenance personnel to Texas for technical consultations with the same company; and received a check for over $5 million that was drawn upon a Texas bank.  *Id.* at 411.  In finding that the defendant was not subject to general jurisdiction in Texas, the Court relied on a number of facts that are also true of DynCorp LCC's contacts in this district: not being incorporated in the forum and not having offices, bank accounts, business records, or real property in the forum.  *Id.*   And just as the defendant's contacts in *Helicopteros* were limited to its interactions with a single Texas helicopter company, DynCorp LLC's identified contacts in the Southern District are limited to contracts with a single entity—NASA—that though large in absolute dollar terms constitute a small fraction of its operations.

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the only case in which the Supreme Court has found general jurisdiction, also demonstrates that DynCorp LLC is not "at home" in the Southern District of Texas. *See Goodyear*, 131 S. Ct. at 2851 (noting that general jurisdiction over a foreign corporation exists when its contacts "are so 'continuous and systematic' as to render them essentially at home in the forum State" (citation omitted)). In *Perkins*, after relocating from the Philippines because of World War II, the defendant conducted all of its business in Ohio and the company president maintained an office in Ohio where all company files were kept and from which all company activities were supervised. *Perkins*, 342 U.S. at 447–48. In fact, "[t]o the extent that the company was conducting *any* business during and immediately after the Japanese occupation of the Philippines, it was doing so in Ohio." *Goodyear*, 131 S. Ct. at 2856 (citing *Perkins*, 342 U.S. at 447–48) (emphasis added).

DynCorp LCC was hardly conducting all of its business in the Southern District of Texas. The $47 million in revenue from services provided at Ellington Field accounted for only 1.2% of its 2012 Revenue. The Fifth Circuit has found similar figures insufficient to support general jurisdiction. *See, e.g.*, *Johnston*, 523 F.3d at 614 (holding that sales in Texas of .5%−2.5% of total global sales over four years did not amount to "substantial, systematic, and continuous contacts"). DynCorp LLC's 154 employees in the District account for less than 1% of the

company's global workforce.  The case law requires more consistent and extensive contacts to support the exercise of general jurisdiction.  *See, e.g.*, *id.* at 611 (citing *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003), and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990), among others).  That a small percentage of DynCorp LLC'ss total employees happen to live and work in the Southern District on projects related to a single contract with NASA does not indicate that it is "at home" in the District.  *See Bowles v. Ranger Land Sys., Inc.*, No. 12-51255, 2013 WL 2666731 at *2 (5th Cir. June 14, 2013) (per curiam) (holding that defendant that only had employees at contractor facilities and military bases in forum was not subject to general jurisdiction). Indeed, the case law Graham cites demonstrates just how difficult it is to establish general jurisdiction, because the primary Fifth Circuit case on which she relies is one that found contacts sufficient only under the much lower threshold for specific jurisdiction.  Docket Entry No. 14 at 10 (citing *Latshaw v. Johnston*, 167 F.3d 208, 213 (5th Cir. 1997)); *but see Latshaw*, 167 F.3d at 211 ("As Latshaw alleges that his suit arises from or relates to the defendant's contact with the forum state, we are concerned with 'specific jurisdiction.'" (citations omitted)).

Accordingly, Graham has failed to demonstrate that venue is proper over DynCorp LLC in this district.

### C. Dismissal or Transfer of Claims Against DynCorp LLC

Given the finding that venue is improper in this District over DynCorp LLC, the Court has discretion to dismiss or transfer the case in the interest of justice to any district where it could have been brought. *See* 28 U.S.C. § 1406(a). In general, the interest of justice "requires transferring such cases to the appropriate judicial district rather than dismissing them." *Chenevert v. Springer*, No. C-09-35, 2009 WL 2215115, at *4 (S.D. Tex. July 22, 2009) (citations and internal quotations omitted). This Court finds that transferring the case would be in the interest of justice because "[t]ransfer would facilitate a more expeditious resolution of the merits of the controversy in a concededly proper forum and would avoid the costs and delay that would result from dismissal and refiling." *Tex. Source Grp., Inc. v. CCH, Inc.*, 967 F. Supp. 234, 239 (S.D. Tex. 1997) (citation and punctuation marks omitted). Transfer also avoids any potential statute of limitations problems that might arise if Graham were required to refile this case involving an event in 2011. *See Herman v. Cataphora, Inc.*, --- F.3d ---, No. 12-30966, 2013 WL 5223101, at * (5th Cir. Sept. 16, 2013) (holding under section 1406(a) that a transfer was "in the interest of justice to avoid any potential statute of limitations issues in California").

The Court finds that are at least two districts where venue would be proper and the case could have been brought: the Eastern District of Virginia and the

Northern District of Texas. DynCorp LLC concedes venue is proper in the Eastern District of Virginia, and sought a convenience transfer to that venue in the event the Court had found venue proper in this district.

But venue is also proper in the Northern District of Texas under section 1391(b)(1) because, although DynCorp LCC's contacts in this district do not meet the continuous and systematic contacts required for general jurisdiction, it is "at home" in that other part of this State. *Goodyear*, 131 S. Ct. at 2851. DynCorp LLC's contacts in the Northern District of Texas are equal to or greater than the contacts found sufficient by the Court in *Perkins*. *See Perkins,* 342 U.S. at 447–448. It maintains a large office in Fort Worth and has an agent for service of process in the Northern District. Docket Entry No. 14-8 at 1. In addition, public filings with the SEC reveal extensive contacts with Fort Worth.[4] The company leases 218,925 square feet of office space, described as executive offices for the company's finance and administration departments, in Fort Worth. Delta Annual Report 2013 at 23. Notably, this is more than twice the 105,814 square feet of office space that the company leases for its official headquarters in Falls Church, Virginia. *Id.* Moreover, within the Northern District of Texas, DynCorp LLC also leases 96,000 square feet of space, described as warehouse logistics headquarters, in Coppell, and has contracted to provide aircraft maintenance services at Sheppard

---

[4] *See Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415 (S.D.N.Y. 2009) (noting that a court may "take judicial notice of filings with government agencies that are a matter of public record").

Air Force Base in Wichita Falls. *Id.* at 7, 23. A review of SEC filings also indicates that the company has used external auditors in Fort Worth to review its filings. *Id.* at 120.

With venue lying in both the Northern District of Texas and the Eastern District of Virginia, the question becomes which is more convenient for the parties and witnesses. The Court is not aware of any cases providing guidance on selecting between two competent forums for transfer under section 1406(a), but finds that it would be appropriate to apply the factors used in assessing a convenience transfer under section 1404. *See* 28 U.S.C. § 1404. In that context, the Fifth Circuit has articulated the following factors:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). (citations and internal punctuation omitted).

The *Volkswagen* factors lead the Court to conclude that transfer to the Northern District is appropriate. Most of the factors are neutral between the two districts, either because the accident occurred in Afghanistan or because neither of

the parties have provided evidence showing one forum to be more convenient than the other. DynCorp LLC, for example, has not identified which of its employees or contractors are likely witnesses at trial.  Moreover, both districts have a similar local interest in the case given DynCorp LLC's extensive presence in each.

The Court ultimately finds most persuasive the fact that the one person who is certain to be a witness and present throughout a trial—Plaintiff Graham—is a resident of Oklahoma.  A transfer to the Northern District of Texas would make prosecuting this case substantially more convenient for Graham than if the Court transferred the case to Virginia, halfway across the country from where she lives. And transferring to another district within the state in which Graham chose to sue is appropriate given that, to the extent possible, the Court should defer to her choice of forum.

After weighing the factors, the Court concludes that the Northern District of Texas is a more convenient forum than the Eastern District of Virginia.  The Court will therefore exercise its discretion under 28 U.S.C. § 1406(a) to transfer the claims against DynCorp LLC to the Northern District of Texas, Fort Worth Division.

## IV.   CONCLUSION

For the reasons discussed above, DynCorp Inc.'s motion to dismiss (Docket Entry. No. 4) is **GRANTED**.  A separate order of dismissal will issue.

16 / 17

DynCorp LLC's motion to dismiss (Docket Entry No. 13) is **GRANTED IN PART** and **DENIED IN PART** and the case against it is **TRANSFERRED** to the Northern District of Texas, Fort Worth Division.  A separate order of transfer will issue.

**SIGNED** this 19th day of September, 2013.

_____
Gregg Costa
United States District Judge